C. Brandon Wisoff (State Bar No. 121930)
bwisoff@fbm.com
Eric D. Monek Anderson (State Bar No. 320934)
emonekanderson@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Maeve L. O'Connor (*pro hac vice* application forthcoming)
Elliot Greenfield (*pro hac vice* application forthcoming)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SETH STEWART, individually and as a representative of the class,<br><br>        Plaintiff,<br><br>    vs.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD MARKETS, INC. and ROBINHOOD SECURITIES, LLC,<br><br>        Defendants. | Case No.:   3:21-cv-00134<br><br>**NOTICE OF REMOVAL**<br><br>**CLASS ACTION** |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF SETH STEWART AND HIS COUNSEL OF RECORD:**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446 and 1453 and 15 U.S.C. §§ 77p and 78bb, Defendants Robinhood Markets, Inc., Robinhood Financial LLC, and Robinhood Securities, LLC (collectively, "Defendants") hereby remove the above-captioned action from the Superior Court of the State of California for the County of Santa Clara to this Court based on the following grounds:

## I.     PROCEDURAL HISTORY

1. On December 21, 2020, Plaintiff Seth Stewart filed this action, entitled *Stewart v. Robinhood Financial, LLC, Robinhood Markets, Inc., and Robinhood Securities, LLC*, Case No. 20-CIV-375138, as a putative class action in the Superior Court of the State of California for the County of Santa Clara.

2. Defendants have not yet received the summons and complaint.  Copies of all process, pleadings and orders available on the state court docket are attached as **Exhibit A**.

3. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b), which provides that a defendant may file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief."

4. Copies of this Notice of Removal will promptly be filed with the Clerk of the Superior Court of the State of California for the County of Santa Clara and served on Plaintiff's counsel of record pursuant to 28 U.S.C. § 1446(d).

5. This case properly may be removed to this United States District Court pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446, and 1453 and 15 U.S.C. §§ 77p and 78bb.  The Superior Court for the State of California for the County of Santa Clara is located within the jurisdiction of the United States District Court for the Northern District of California. Furthermore, under Civil Local Rule 3-2(d), the San Francisco Division is the proper division of this Court because Plaintiff alleges that his claims arose in whole or part in that county and the earliest-filed action in this District related to the instant action – *In re Robinhood Outage*

1    *Litigation*, Case No. 20-cv-01626 – is assigned to the Honorable James Donato in the San

2    Francisco Division.  Defendants intend to file a motion to consider whether cases are related

3    pursuant to Civil Local Rule 3-12 in connection herewith.

4    **II.     REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT**

5           6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

6    § 1332(d), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because as alleged (*i*)

7    this is a putative class action plaintiff class of 100 or more members; (*ii*) the matter in controversy

8    exceeds $5 million, exclusive of interest and costs, under Plaintiff's theory of recovery; and (*iii*)

9    minimum diversity is satisfied.  28 U.S.C. § 1332(d)(2).  Removal is therefore authorized by

10   28 U.S.C. § 1441.

11          **A.      The Class Action Requirement Is Satisfied**

12          7.      CAFA defines a "class action" as "any civil action filed under Rule 23 of the

13   Federal Rules of Procedure or similar state statute or rule of judicial procedure authorizing an

14   action to be brought by 1 or more representative persons as a class action."  28 U.S.C.

15   § 1332(d)(1)(B).

16          8.      This action is a "class action" within the meaning of 28 U.S.C. § 1332(d)(1)(B)

17   because it was filed under a state statute or rule of judicial procedure, California Code of Civil

18   Procedure § 382, that, similar to Federal Rule of Civil Procedure 23, authorizes an action to be

19   brought by one or more representative persons as a class action.  (Compl. ¶ 65.)

20          9.      Plaintiff purports to represent a class of "All persons whose orders were

21   unexecuted due to the outages of Defendants' trading platform on March 2-3, 2020 and March 9

22   and dates thereafter when outages or disruption prevented customers from accessing their account

23   or executing orders and who suffered out of pocket or other losses" (the "Proposed Class").

24   (Compl. ¶ 65.)  Plaintiff alleges that the Proposed Class "includes hundreds, and likely thousands,

25   of Defendants' customers," such that "joinder of all Class members is impracticable."  (Compl.

26   ¶ 66.)  On the face of the Complaint, the requirement that the Proposed Class involves 100 or

27   more members is easily satisfied.

28

### B.      The Amount in Controversy Requirement Is Satisfied

10.      The amount in controversy requirement is satisfied under the theory asserted by Plaintiff because the claims of putative class members, aggregated together, exceed the sum or value of $5 million exclusive of interest and costs.  28 U.S.C. § 1332(d)(2), (d)(6).  A notice of removal under CAFA "'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

11.      Plaintiff alleges that "damages are in excess of $100 million."  (Compl. ¶¶ 90, 101, 112, 122, 132, 137, 143.)  When a "plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'"  *Dart*, 574 U.S. at 84 (citing 28 U.S.C. § 1446(c)(2)).  While Defendants deny that Plaintiff or any putative class members are entitled to recover any amount (or any other relief), Plaintiff plainly seeks to recover an aggregate amount over $5 million.

### C.      The Minimal Diversity Requirement Is Satisfied

12.      The minimal diversity of citizenship provision of 28 U.S.C. § 1332(d)(2)(A), requiring that "any member of a class of plaintiffs is a citizen of a State different from any defendant," is satisfied.

13.      Under 28 U.S.C. § 1332(c)(1), a corporation is a citizen of the state by which it has been incorporated and the state where it has its principal place of business.  Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California, and is therefore a citizen of Delaware and California.  (Compl. ¶ 13; Declaration of Miles Wellesley ("Wellesley Decl.") ¶ 4.)

14.      For purposes of diversity jurisdiction, a limited liability company "is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also Meza v. Lowe's Home Centers, LLC*, No. 15-CV-02320, 2015 WL 5462053, at *2 (N.D. Cal. Sept. 16, 2015) (holding limited liability

company to be a citizen of state in which sole member corporation was incorporated and had its principal place of business).

15.      Robinhood Financial LLC is a Delaware limited liability company.  Robinhood Markets, Inc. is the sole owner and member of Robinhood Financial LLC.  (Compl. ¶ 14; Wellesley Decl. ¶ 5.)  For purposes of diversity jurisdiction, therefore, Robinhood Financial LLC is a citizen of Delaware and California.

16.      Robinhood Securities, LLC is a Delaware limited liability company.  Robinhood Markets, Inc. is the sole owner and member of Robinhood Securities, LLC.  (Compl. ¶ 15; Wellesley Decl. ¶ 6.)  For purposes of diversity jurisdiction, therefore, Robinhood Securities, LLC is a citizen of Delaware and California.

17.      Plaintiff is a citizen of Arizona, therefore satisfying minimal diversity.  (Compl. ¶ 12.)  Moreover, the Proposed Class includes "[a]ll persons whose orders were unexecuted due to the outages of Defendants' trading platform on March 2-3, 2020 and March 9 and dates thereafter when outages or disruption prevented customers from accessing their account or executing orders and who suffered out of pocket or other losses."  (Compl. ¶ 65.)

18.      Minimal diversity of citizenship is therefore also satisfied because at least one prospective class member is a citizen of a state different from any defendant.

## III.    REMOVAL IS PROPER BASED ON FEDERAL QUESTION JURISDICTION

19.      This Court has original jurisdiction over this action because it arises "under the Constitution, laws, or treaties of the United States."  28 U.S.C. §1331.  Removal is therefore authorized by 28 U.S.C. § 1441.

20.      This action involves allegations that Defendants violated rules and regulations promulgated by the Securities and Exchange Commission ("SEC").  (Compl. ¶¶ 57-58, 82.)

21.      Plaintiff alleges that Defendants' conduct violated California's Unfair Competition Law, stating that the conduct was "unlawful" because it violated "[a]pplicable rules of the SEC."  (Compl. ¶ 82(d).)

22.      Where, as here, a plaintiff's complaint raises a substantial federal question, it may be removed to federal court under 28 U.S.C. §1441.  *Grable & Sons Metal Prod., Inc. v. Darue*

*Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (federal question jurisdiction lies "over state-law claims that implicate significant federal issues").

23.     To the extent that other state law claims do not arise under, or turn on, federal law, this Court has jurisdiction over those claims pursuant to 28 U.S.C. §1367(a).

## IV.    REMOVAL IS PROPER UNDER SLUSA

24.     To the extent that Plaintiff claims that CAFA and federal question jurisdiction do not provide adequate grounds upon which to remove this action, removal also is proper under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 12 Stat. 3227.  Specifically, SLUSA permits the removal of any precluded class action, such as this one, that is (*i*) a "covered class action," (*ii*) "based upon the statutory or common law of any State," (*iii*) "alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 78bb(f)(1)-(2); *see also* 15 U.S.C. §§ 77p(b)-(c); *Madden v. Cowen & Co.*, 576 F.3d 957, 964 (9th Cir. 2009) (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 (2006)) (any lawsuit precluded by SLUSA is removable).

## V.    CONCLUSION

25.     For the reasons set forth herein, pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446 and 1453 and 15 U.S.C. §§ 77p and 78bb, this action may be removed to this Federal District Court.

**WHEREFORE**, Defendants request that this action be brought to this Court, and this Court make and enter such further orders as may be necessary and proper.

Dated:  January 7, 2021                    FARELLA BRAUN + MARTEL LLP

By:  *Eric Monek Anderson*
_____
Eric Monek Anderson

Attorneys for Defendants
ROROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Mario Iskander, Esq. (327025)<br>The Law Offices of Hani S. Bushra<br>16541 Gothard St #208, Huntington Beach, CA 92647 | |

TELEPHONE NO.: (714) 984-2000   FAX NO. (Optional):

ATTORNEY FOR (Name): Plaintiff

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 12/21/2020 12:00 AM
Reviewed By: R. Walker
Case #20CV375138
Envelope: 5505453**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME:

CASE NAME:
Seth Stewart v. Robinhood Financial, LLC, Robinhood Markets, Inc and Robinhood Securities, LLC

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited   [ ] Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **20CV375138**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [x] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation
(Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): Six
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 18/12/2020

Mario Iskander
_____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form | Save this form | Clear this form

1   HANI BUSHRA (SBN 256790)
    MARIO ISKANDER (SBN 327025)
2   **THE LAW OFFICES OF HANI S. BUSHRA**
    16541 Gothard Street # 208
3   Huntington Beach, California 92647
    Telephone: (714) 984-2000
4   Facsimile: (714) 489-8128
5   Email: hani@bushralaw.com
           mario@bushralaw.com
6
7        and
8   LEE SQUITIERI (*pro hac vice*)
    **SQUITIERI & FEARON, LLP**
9   32 East 57th Street
    12th Floor
10  New York, New York 10022
    Telephone: (212) 421-6492
11  Facsimile: (212) 421-6553
    Email: lee@sfclasslaw.com
12
13  Attorneys for Plaintiff and the Proposed Class

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 12/21/2020 12:00 AM
Reviewed By: R. Walker
Case #20CV375138
Envelope: 5505453**

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA
15                        COUNTY OF SANTA CLARA

16  SETH STEWART, individually and as a          Case No.: **20CV375138**
    representative of the class,
17                                               CLASS ACTION COMPLAINT FOR
                    Plaintiff,                   DAMAGES
18
19         vs.                                   DEMAND FOR JURY TRIAL
20  ROBINHOOD FINANCIAL, LLC,
    ROBINHOOD MARKETS, INC. and
21  ROBINHOOD SECURITIES, LLC,
22
                    Defendants.
23

24       1.    Plaintiff, Seth Stewart ("Plaintiff") on behalf of himself and all other persons who

25  were/are customers of one or more of the Defendants, collectively referred to herein as

26  ("Robinhood") alleges as follows on personal knowledge as to all facts related to himself and upon

27  information and belief as to all other matters.

28

## INTRODUCTION

2.     Robinhood is a licensed broker-dealer providing stockbroker services to customers almost exclusively through online platforms owned and controlled by Defendants.  Robinhood does not charge any trading fees.  This, among other online features promoted to users, has allowed it to sign up over 13 million account holding users to its platform as of July 2020.  In order to use Robinhood's platform, an investor must open an account.

3.     Plaintiff and other class members opened accounts and on certain dates identified herein attempted to have Robinhood execute their trade orders but Robinhood could not, and did not execute the order as a result of which Plaintiff and other class members suffered losses.

4.     In offering trading services, Robinhood assumed a duty to ensure that its systems were sufficiently equipped to reliably deliver the contracted for services under reasonably foreseeable customer demands and market conditions, such as those at issue in this case. Robinhood acted negligently by failing to adequately or properly equips itself technologically to systemically maintain Plaintiff and Class members' access to trading services. Due solely to its own negligence and failure to maintain an adequate infrastructure, Robinhood breached obligations owed to Plaintiff and Class members and caused them substantial losses.  Its failures constitute egregious breaches of obligations to clients due to Robinhood's history of such failures, the magnitude of the service outages, the absence of alternative means for customers to protect their positions and investments, and lack of communication and customer support.

5.     The service outages on **March 2** and **3, 2020**, were particularly devastating for Plaintiff and the Class as the Dow Jones Industrial Average rose 5.1% during that time. Meanwhile, Robinhood users were locked out of their accounts and unable to access their funds or make trades—while the markets gained a record $1.1 trillion.  The outage on **March 9, 2020**, was similarly harmful, as the Dow Jones Industrial Average had its largest point plunge in history up to

that date.  Again, Plaintiff and the Class were unable to access their funds or make trades and suffered significant losses as a result.  (Collectively Robinhood's **March 2, 3** and **9th** service failures are referred to as the "Outages.")  Trades that were placed before the Outages, for some of which trade confirmations were sent, also failed, or were processed at incorrect times or incorrect prices during the Outages. Additionally, some class members were, at times during the Outages, able to seemingly place trades, and again some class members received trade confirmations; however, it was later learned that some of those trades also failed, or were processed at incorrect times or incorrect prices during or after the Outages.

6.    Such failures constitute negligence, breaches of contract and violations of various laws of the State of California, violations of FINRA regulations and give rise to the causes of action described herein.

## JURISDICTION AND VENUE

7.    The Court has subject-matter jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10, because this action is a cause not given by statute to other trial courts.

8.    This Court has personal jurisdiction over Defendants because each Defendant maintains substantial contacts with California through their operations, and because Plaintiff's injuries arose out of and relate to Defendants' operations in California, and because Plaintiff has been harmed by Defendants' torts in California.

9.    Venue is proper in Santa Clara County pursuant to Section 395.5 of the California Code of Civil Procedure because Defendants are corporations or associations located in Santa Clara County and because of venue and choice of law agreements between Defendants and its customers such as Plaintiff which mandate that actions be brought in this County.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

10.   This action is not removable because federal courts lack subject-matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

11.   All conditions precedent to this action have occurred, been performed, or have been waived.

## PARTIES

A.   **Plaintiff Stewart**

12.   Plaintiff Seth Stewart is a Robinhood customer and was a regular user of its platform for trading securities.  Plaintiff is a citizen of Arizona and resides in Arizona.  On **March 2** and **3rd**, **2020**, Plaintiff attempted to make trades on Robinhood's platform, but such trades were not executed due to the Outages.  As a result of Robinhood's failures, Plaintiff lost money.

B.   **The Robinhood Defendants**

13.   Defendant Robinhood Markets, Inc. ("RMI") is a financial-services company organized under Delaware law and headquartered in Menlo Park, California.  RMI through its subsidiaries provides an online platform for customers to trade stocks, options, exchange-traded funds, and cryptocurrency.  RMI is a resident of California and Delaware.

14.   Defendant Robinhood Financial, LLC ("RF") is a wholly owned subsidiary of RMI. RF is a registered broker dealer and member of FINRA.  It offers online and mobile application based discount stock brokerage services to self-directed investors, *i.e.* it takes customers' orders electronically and transmits said order to exchanges and/or communications and provides information of orders and executions in a timely (instantaneous) manner.

15.   Robinhood Securities, LLC ("RS") is organized under Delaware law and is also a wholly-owned subsidiary of RMI.

16.   RF contracts with its customers pursuant to written "Terms and Conditions."  Said contract by its terms is on behalf of RF and RMI.  RF and RS also contract with their customers

pursuant to a "Customer Agreement."  The Customer Agreement is, according to the "Terms &

Conditions" an "additional agreement and terms of use" applicable to customers such as class

members.  For customers who wish to trade options such as Plaintiff, RF and RS also enter into an

option agreement ("OA") with its customers.  The foregoing contracts are also supplemented by the

Defendants "Business Continuity Plan" (collectively, the foregoing are referred to as "the

Agreements.")  Prior to the Outages in March 2020, the Agreements had most recently been revised

on **February 5, 2020**. After the Outages, Robinhood revised its Agreements on **April 28, 2020**, and

again on **June 22, 2020**.

17.    All three Robinhood entities are collectively referred to as "Defendants."  The terms

"Robinhood" and "the Company" are also sometimes used to refer to all three collectively.

## FACTUAL ALLEGATIONS

**A.    Robinhood**

18.    Robinhood was founded by Vlad Tenev and Baiju Bhatt in 2013.  Robinhood offers

people the ability to invest in stocks, ETFs, and options through an electronic trading platform, both

online and through an app.

19.    Robinhood competes with other online and traditional brokerages by not charging

trading fees. At the time of its founding, most brokerage firms charged about $10 or more to make a

trade.  Robinhood also competes with traditional financial institutions by offering more user-

friendly digital services, which has made Robinhood very popular, especially with high frequency

traders.

20.    Robinhood touts itself as "a pioneer in commission-free investing." Robinhood,

https://robinhood.com/us/en/ (last visited **March 17, 2020**).  The firm markets itself primarily to

younger and more active investors.

- 4 -

21.    In July of 2020, Robinhood said it had over 13 million users on its platform.  Its typical customer is 31 years old on average.  In August 2020, after raising $200 million in Series G funding, Robinhood was valued at $11.2 billion.

22.    Robinhood's service originally offered only stock and bond trading.  As Robinhood grew, it added more risky and complex products—like options and margin trading.

23.    Robinhood's interface also highlights particular stocks and "makes suggestions to users on what to trade next."

24.    According to the New York Times, Robinhood's "success appears to have been built on a Silicon Valley playbook of behavioral nudges and push notifications, which has drawn inexperienced investors into the riskiest trading. . .  And the more that customers engaged in such behavior, the better it was for the company."  "At the core of Robinhood's business is an incentive to encourage more trading.  It does not charge fees for trading, but it is still paid more if its customers trade more." [1]

25.    Robinhood's users trade more often than average, and faster, and with more risk than traders who use other platforms. According to an analysis of new filings from nine brokerage firms by the research firm Alphacution for The New York Times, in the first quarter of 2020, Robinhood users traded nine times as many shares as E-Trade customers and 40 times as many shares as Charles Schwab customers. They also bought and sold 88 times as many risky options contracts as Schwab customers, relative to the average account size, according to the analysis. [2]

**B.    Robinhood's Business Model**

26.    Robinhood makes money in a variety of ways, although profiting from the volume of trading by its clients, through order-flow payments from third-party firms like Citadel Securities

---

[1]  Nathaniel Popper, *Robinhood Has Lured Young Traders, Sometimes With Devastating Results,* The New York Times (July 8, 2020) https://www.nytimes.com/2020/07/08/technology/robinhood-risky-trading.html?searchResultPosition=2 (last visited Aug. 19, 2020).
[2]  *Id.*

and Two Sigma Securities is a major driver of revenue. Robinhood charges market makers a percentage of the spread on each trade it sells, compared to a fixed amount – which some critics say creates a conflict of interest for the company. A bigger difference between the bid and asked price means Robinhood earns more, while the customer pays a higher price for stock. *See,* https://www.forbes.com/sites/advisor/2020/09/03/robinhood-investigation-sec-finra/?sh=73d865bd4d61.

27. Payment for order flow fees are also paid to Robinhood from electronic market makers for passing on customer orders. For example, if a Robinhood users purchases a share of Apple through their account, Robinhood sends that order to a large market maker like Citadel Securities and receives a few pennies in return—i.e., the "payment for order flow" fees. Citadel, meanwhile, completes the trade and makes money in the spread between "bid" and "ask."[3]

28. In fact, payment for order flow fees are reportedly Robinhood's primary revenue stream—greatly exceeding what it earns from Robinhood Gold, its premium free based service, or from the interest it makes on cash balances in customer accounts, which is another source of Robinhood's revenue.

29. For Robinhood, those fees add up and have grown rapidly. Independent analysis suggests that payments for order flow generated an estimated $69 million in revenue for Robinhood in 2018, up 227% from the previous year, and accounted for more than 40 percent of its overall revenue. According to a recent SEC filing, Citadel Securities and several other firms paid Robinhood nearly $100 million in the first quarter of 2020. [4] And in the second quarter of 2020 — Robinhood made $180 million off trades, roughly double from the prior quarter.[5]

---

[3] Jeff John Roberts, David Z. Morris, *Robinhood makes millions selling your stock trades … is that so wrong?,* Fortune (July 8, 2020), https://fortune.com/2020/07/08/robinhood-makes-millions-selling-your-stock-trades-is-that-so-wrong/ (last visited Aug. 19, 2020).

[4] Nathaniel Popper, *Robinhood Has Lured Young Traders, Sometimes With Devastating Results, T*he New York Times

- 6 -

**C.      Robinhood's History Of Violations And Service Failures**

30.    Obviously, Robinhood's business model leads to increased revenue as trading volume increases.  Robinhood accordingly seeks more customers and encourages more trading.

31.   But rather than ensuring its infrastructure capabilities keep pace with Robinhoods' representations and contractual service obligations to customers, Robinhood neglects its contractual and regulatory service obligations.  Robinhood has a history of breaching its legal obligations.  Just a few months before the Outages, on **December 19, 2019**, FINRA announced it fined Defendant Robinhood Financial $1.25 million for best execution violations related to its customers' equity orders and related supervisory failures that spanned from October 2016 to November 2017.[6]  As part of the findings, FINRA found that despite requirements to do so, Robinhood "did not have written procedures related to or addressing how it performed its 'regular and rigorous' reviews or reviewed non-marketable orders for best execution purposes."  As part of the settlement, Robinhood agreed to retain an independent consultant to conduct a comprehensive review of the firm's systems and procedures related to best execution.[7]

32.     Additionally, Robinhood has a history of failing to provide adequate service to its customers, particularly those engaged in options trading.  For example, a similar service outage occurred on **April 14, 2016,** where users were unable to trade securities for an extended period and

(July 8, 2020) (https://www.nytimes.com/2020/07/08/technology/robinhood-risky-trading.html?searchResultPosition=2) (last visited Aug. 19, 2020).

[5]  Kate Rooney, Maggie Fitzgerald, *Here's how Robinhood is raking in record cash on customer trades – despite making it free*, CNBS (August 13, 2020), https://www.cnbc.com/2020/08/13/how-robinhood-makes-money-on-customer-trades-despite-making-it-free.html?_source=iosappshare%7Ccom.apple.UIKit.activity.Mail (last visited Aug. 19, 2020).
[6]  *See* https://www.finra.org/media-center/newsreleases/2019/finra-fines-robinhood-financial-llc-125-million-best-execution (last visited Aug. 19, 2020).

[7]  *Id*. at 6.

their portfolios failed to accurately reflect their holdings.[8]  And in December 2018, customers trading in options faced comparable outages and incurred significant trading losses, similar to those affected during the Class Period.[9]  Again, in October of 2019, Robinhood suffered multiple days of system wide failures and outages.[10]

33.   Robinhood's digital platform app has been beset also by its technology glitches, which have been significant and ongoing. "In 2018, Robinhood released software that accidentally reversed the direction of options trades giving customers the opposite outcome from what they expected.  Last year, it mistakenly allowed people to borrow infinite money to multiply their bets, leading to some enormous gains and losses."[11]

34.   Despite those prior problems, Robinhood failed to remedy the flaws in its systems or build out an adequate infrastructure to handle the volume of customers it was signing up.

**D.   The 2020 Outages**

35.   From **January 1, 2020** through **November 20, 2020** Robinhood has experienced as many as seventy outage or disruptions on its trading platform.

36.   The Outages were not due to any unprecedented market event or unforeseeable contingency.  During the financial crises in 2008, there were two days on which trading volume was

---

[8]  Lucinda Shen, *A Glitch on This Stock Trading App Made Users Think They'd Lost Thousands of Dollars*, Yahoo Finance (April 14, 2020) https://in.finance.yahoo.com/news/glitch-stock-trading-app-made-192505186.html (last visited Aug.19, 2020).

[9]  Dan DeFrancesco, *Robinhood's options trading stopped working, and customers are furious over the money they say they lost*, Business Insider (Dec. 13, 2018), https://www.businessinsider.com/robinhoods-options-trading-shutdown-and-customers-are- furious-2018-12 (last visited Aug. 19, 2020).

[10]     *See* https://status.robinhood.com/history?page=4. (last visited Aug. 19, 2020).

[11]     *Robinhood options errors*, Elite Trader, https://www.elitetrader.com/et/threads/robinhood- options-errors.327998/ (last visited Aug. 19, 2020).

higher than the volume on any of the dates Robinhood crashed.  This includes the record for the highest trading volume on **October 10, 2008,** at 19.76 billion shares.  Trading volume of this magnitude was readily foreseeable and Robinhood should have designed its system to handle it.

37.    Robinhood claims that its more recent Outages resulted from "stress on [their] infrastructure" due to "unprecedented load," and "record volume."  But these circumstances, even if true, were encouraged and driven by Robinhood's own business model.

38.    At 9:33 am[12] the morning of **March 2, 2020**, a Monday and the first day of the month for trading traditional securities, Robinhood's trading platform completely stopped functioning. As a result, at that moment, the platform stopped processing orders entered by customers prior to the Outage and customers were unable to enter new orders. Robinhood was unable to restore full functionality until Tuesday, **March 3, 2020** at 11:54 am. In total, Robinhood's systems were nonfunctional or inaccessible to customers for 26 hours and 21 minutes.

39.    At 11:02 am the morning of March 2, Robinhood publicly acknowledged the "downtime" and impact on "all functionalities" of the platform in on Twitter:



> **Robinhood Help**
> @AskRobinhood
>
> Our system is experiencing downtime issues that are affecting all functionalities on our platform_ We are aware of the issue and are working to have all systems up and running as soon as we can. We're so sorry this is happening!
>
> <J 1,520   11:02 AM - Mar 2, 2020
>
> O 5,220 people are tatl<ing about this    >

Twitter, https://twitter.com/AskRobinhood/status/1234509495084240898 (last visited March 17, 2020). The Robinhood Help account (@AskRobinhood) is owned or controlled by Robinhood. The

---

[12]    All times are Eastern Standard Time, unless otherwise indicated.

blue verified badge means that the account is of public interest and Twitter has verified its authenticity.

40.    Around 4:00 pm on the afternoon of March 2, Robinhood emailed its customers directly to repeat the substance of the message posted to Twitter earlier that morning, which was that Robinhood was "experiencing downtime across [its] platform," that the outage was "affecting functionality on Robinhood," and that the outage was affecting customers' "ability to trade":

<div align="center">

Update on Robinhood System Status

This morning, starting at 9:33 AM ET, we started experiencing    across our platform. These issues are affecting functionality on Robinhood, including your ability to trade.              ·

All of us at Robinhood are working as hard as we can to resume service, and we'll update you as soon as the issue is resolved. We understand the impact this is having and we apologize for any trouble this has caused.

Please check our status page at status.robinhood.com .
Thank you for  being a Robinhood customer.

Sincerely,
The Robinhood Team
robinhood.com

</div>

41.    At 4:07 pm on March 2, immediately after emailing its customers, Robinhood posted another message to Twitter publicly confirming that that its platform was "still experiencing system-wide issues" and that it had yet to "resume service":

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

> **_f_  Robinhood Help 0**
> @Asl<Robinhood
>
> We are still experiencing system-wide issues. Our team is continuing to work to resolve this and we'll provide updates as they become available_
>
> We apologize again for the trouble this has caused and appreciate your patience with us as we work to resume service.
>
> 0 2,071 people are talking about this                    >

Twitter, https://twitter.com/AskRobinhood/status/1234586094395523074 (last visited March 17, 2020).

42.   Early on **March 3, 2020**, at 2:19 am, Robinhood posted two messages to its Twitter account reporting that its systems were "currently back up and running," that customers might still "observe some downtime" as Robinhood prepared for the day, and acknowledging that "issues like this are not acceptable":

> Robinhood Help 0 @AskRobinhood · Mar 3, 2020
> Robinhood is currently back up and running. We're testing Through the night, and you may observe some downtime as we prepare for tomorrow.
>
> Robinhood Help
> @AskRobinhoodI '
>
> When it comes to your money, issues like this are not acceptable. If you're a customer, we're sending you info on how to contact us so we can work with you directly to address your concerns.
>
> 138  2:19 AM - Mar 3. 2020                    
>
> 167 people are talking about this
>                                                          >

Twitter,  https://twitter.com/AskRobinhood/status/1234740273877405697    (last  visited  March 17, 2020).

43.    At about 2:45 am the morning of March 3, Robinhood sent another email to customers saying directly to them what it had just said publicly, which was that its systems were "currently back up and running," that the outage was "not acceptable," and that Robinhood realized that it had "let [customers] down":

> Robinhood is currently back online
>
> We're reaching out to let you know that Robinhood is currently back up and running.
>
> We want to assure you that your funds are safe and personal information was not affected.
>
> When it comes to your money, issues like this are not acceptable. We realize we let you down, and our team is committed to improving your experience.

44.    At 10:11 am on March 3, Robinhood reported, again through its public-facing Twitter account, that its "systems are currently  experiencing  downtime" and that "full functionality" of the Robinhood platform remained unavailable to customers:



Twitter,  https://twitter.com/AskRobinhood/status/1234859068763844613    (last  accessed  March 17, 2020).

45.   At 11:35 am, later the morning of March 3, Robinhood stated on its Twitter account that its service had "been partially restored" and that it was "working toward restoring and maintaining full  functionality":

> I     Robinhood Help 0
>       @AskRoblnhood
> Service has been partially restored on Robinhood and we're working toward restoring and maintaining full functionality. We'll continue to share updates here and on status.robinhood.com.
>
> 160   11:35 AM - Mar 3, 2020
>
> Q 225 people are talking about this

Twitter, https://twitter.com/AskRobinhood/status/1234880124463435776  (last visited March  17, 2020).

46.   At 11:54 am on March 3, Robinhood reported that its systems had been "now fully restored":

> Robinhood Help 0
>       @AskRobinhood
> Robinhood is now fully restored. We know this has been frustrating and we will work diligently to provide the level of service you deserve.
>
> 671   1154 AM - Mar 3, 2020
>
> 809 people are talking about this

Twitter, https://twitter.com/AskRobinhood/status/1234884989189124096 (last visited March 17, 2020).

47.   On **March 3, 2020**, the co-founders and co-CEOs of Robinhood released a statement on Robinhood's blog, entitled "Under the Hood" and subtitled "The Official Robinhood Blog," explaining that the "outage" was caused by "stress on our infrastructure" and that, while it knows customers "depend on Robinhood for [their] investments," it took "too long" to restore services:

An Update from Robinhood's Founders

When it comes to your money, we know how important it is for you to have answers. The outages you have experienced over the last two days are not acceptable and we want to share an update on the current situation.

Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure---which struggled with unprecedented load. That in turn led to a "thundering herd" effect-triggering a failure of our DNS system.

Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.

Our team is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing. We're simultaneously working to reduce the interdependencies in our overall infrastructure. We're . also investing in additional redundancies in our infrastructure.

After a brief outage this morning, our trading platform was stable for the remainder of the day. As our engineering team works to upgrade our infrastructure,  we may experience additional brief outages, but we're now better positioned to more quickly resolve them.

We take our responsibility to you and your money seriously. We recognize that many of you have questions, and we're working to respond to them as quickly as possible.

Many of you depend  on Robinhood  for your  investments,  and we're personally committed to doing all we can to operate a stable service that's available when you need it the most.

-Baiju and Vlad, Co-Founders and Co-CEOs

Robinhood, An Update from Robinhood 's Founders https://blog.robinhood.com/news/2020/3/3/ an-update-from-robinhoods-founders (last visited March 17, 2020).

48.     As Robinhood admits, the Outages were a result of internal failures, not a result of the overall market trading volume. On **March 2, 2020**, market data shows that on all U.S. exchanges combined the volume of shares traded was 14,163,098,470 shares. On **March 3, 2020**, the volume was 14,900,627,470 shares, and on **March 9, 2020**, the volume was 17,614,290,337 shares. While these numbers are higher than average, they are not unheard of and are not records. Trading volume on **February 27** and **February 28, 2020**, just before the outage, far exceeded either March 2 or 3, 2020 with 15,821,612,374 and 19,357,141,449 shares trading hands each day, respectively. February 28 was the second busiest day in history based on trading volume.

49.     During the Outages, users were unable to contact Robinhood because Robinhood's customer support "Help Center" was down and completely useless.  Customers were unable to contact any Robinhood representative through email, and there was no active phone number for customers to call.  Robinhood users were powerless—wholly unable to access their accounts or make trades to mitigate their damages.

50.     In Robinhood Securities, LLC's 2020 Annual Audited Report, filed with the SEC on **April 13, 2020**, Robinhood described the Outages:

> On **March 2-3, 2020**, the Robinhood platform experienced an outage across various services, which prevented customers from using the app, website, and help center and on **March 9, 2020**, the Robinhood platform experienced an outage across its trading products, which prevented customers from placing trades (collectively, the "Outages"). The Company is currently in the process of investigating and evaluating the impact of the Outages. There are many uncertainties associated with these types of incidents and possible impacts associated with service outages may include remediation costs to customers, systems upgrades, increased insurance costs, adverse effects on compliance with laws and regulations, litigation, and reputational damage.

51.     As of July 2020, Robinhood's website had experienced 47 service outages since March, including the nearly two-day outages on March 2 and 3, 2020 and six in April 2020, fifteen

in June 2020 and seven in August 2020  At least seven outages impeded Robinhood customers from accessing accounts or executing orders.

52.   Robinhood alternatives E*Trade, Schwab, Fidelity, and Interactive Brokers received less than half of the complaints received by the FTC since the beginning of the year 2020 through mid-July.  This is according to FTC records obtained via public information request by Bloomberg.

53.   Notwithstanding Robinhood's explanation and apologies, its trading platform crashed again in the week after trading services had been restored.

54.   Robinhood claims that its more recent Outages resulted from "stress on [their] infrastructure" due to "unprecedented load," and "record volume."[13]  But these circumstances, even if true, were encouraged and driven by Robinhood's own business model—opening as many new accounts as possible and encourage its users to trade as much as possible[14] without regard to its infrastructure's capacity.

55.   The significant and repeated Outages immediately increased public scrutiny of Robinhood.  On **July 8, 2020**, the New York Times published an article profiling Robinhood.

56.   According to Robinhood employees quoted in the New York Times article, the March 2-3 "outage was rooted in issues with the company's phone app and servers.  The employees also said the start-up had underinvested in technology and moved too quickly rather than carefully."

---

[13]   Baiju Bhatt and Vladimir Tenev, *An Update from Robinhood's Founders*, Robinhood (March 3, 2020) https://blog.robinhood.com/news/2020/3/3/an-update-from-robinhoods-founders ((last visited Aug. 19, 2020).

[14]   Nathaniel Popper, *Robinhood Has Lured Young Traders, Sometimes With Devastating Results,* The New York Times (July 8, 2020) https://www.nytimes.com/2020/07/08/technology/robinhood-risky-trading.html?searchResultPosition=2 (last visited Aug. 19, 2020).

The same employees, who declined to be identified in the article, bluntly stated that "the company failed to provide adequate guardrails and technology to support its customers."[15]

**E.    Robinhood's Failure To Maintain Its Systems And Its Handling Of The Outage Were A Breach Of Regulatory Obligations and Commitments**

57.    As a broker-dealer, Robinhood is subject to various rules and regulations that impact many aspects of its business.  One requirement is that Robinhood must make, keep, furnish and disseminate records and reports prescribed by the Securities and Exchange Commission ("SEC"). FINRA also has specific recordkeeping rules for companies such as Robinhood. The records Robinhood is required to keep, include but are not limited to, communications relating to their "business as such," customer account ledgers, securities records, order tickets, and trade confirmations.

58.    Additionally, under federal and state securities laws, securities industry rules, and industry best practices, brokerage firms that offer online trading services to their customers are required to, among other things, ensure that customers receive the best execution of trades and that the firm has adequate operational capability to handle customer trading volume.  As far back as **September 9, 1998**, the U.S. Securities and Exchange Commission ("SEC") issued Staff Legal Bulletin No. 8, after widespread brokerage firm outages and trading delays that had occurred in October 1997.  Among other admonishments, the SEC warned firms that:

> Because broker-dealers are becoming increasingly reliant on technology to perform trading functions and to route customer orders to markets, these problems could be more severe during future periods of high trading volume. Broker-dealers therefore need to take steps to prevent their operational systems from being overwhelmed by periodic spikes in systems message traffic due to high volume. In particular, broker-dealers should not merely have sufficient systems capacity to handle average-to- heavy loads.  Rather, broker-dealers should have the systems capacity to handle exceptional loads of several times the average trading volume.

---

[15] *Id.*

59.   Brokerage firms were also reminded of these requirements by the National Association of Securities Dealers ("NASD"), a self-regulatory organization that supervised broker-dealers like Robinhood, in a 1999 Notice to Members ("NTM") 99-11, which stated that: "First and foremost, NASD Regulation reminds member firms of their obligations under [SEC] Staff Legal Bulletin No. 8 to ensure that they have adequate systems capacity to handle high volume or high volatility trading days."

60.   In addition, Robinhood has a duty to develop, design, test, and monitor its services; and to create and maintain a written business continuity plan identifying procedure relating to an emergency or significant business disruption. Such procedures must be reasonably designed to enable the company to meet its existing obligations to customers during an emergency, such as an outage. Indeed, FINRA Rule 4370 requires such a business continuity plan to, at minimum, address "mission critical systems." These systems are defined as "any system that is necessary, depending on the nature of a member's business, to ensure prompt and accurate processing of securities transactions, including, but not limited to, order taking, order entry, execution, comparison, allocation, clearance and settlement of securities transactions, the maintenance of customer accounts, access to customer accounts and the delivery of funds and securities." FINRA Rule 4370(g)(1).

61.   Robinhood's written business continuity plan (in place at the time of the March Outages), was a one-page document with a section entitled "contact us" where Robinhood provided the following:

> If after a significant business disruption you cannot contact us as
> you usually do through our website robinhood.com or through our
> mobile applications, you should call our emergency number in Menlo
> Park, CA at (844) 428-5411 or submit a ticket at
> support.robinhood.com.

However, during the Outages and since, there was no way to get in touch with a live person, and the phone number provided was useless. Nevertheless, during the Outages, Plaintiff and Class members attempted to seek support by calling the number provided by Robinhood, with no success whatsoever.  Plaintiff also attempted to contact support.robinhood.com, again to no avail. Emails were not responded to at all, or not for several days until long after the Outages had done their damage.  Additionally, during the Outages, attempts to contact Robinhood through its website at robinhood.com were also futile as the website was completely down for the duration of the Outages. Following the Outages, employees at Robinhood confirmed that the Company did not offer any phone support.

62.    Since the Outages, Robinhood has admitted that its systems cannot handle customer communications during "business disruptions" and has thus modified its business continuity plan— notably, the phone number has now been removed and there are no references to phone support. Robinhood also deleted the following assurance:

> Our business continuity plan addresses: data back-up and recovery; all mission critical systems; financial and operational assessments; alternative communications with customers, employees, and regulators; alternate physical location of employees; critical supplier, contractor, bank and counter-party impact; regulatory reporting; and assuring our customers prompt access to their funds and securities if we are unable to continue our business. As an on-line broker-dealer, it also addresses the recovery of technology systems. In general, our technology systems are cloud-hosted and at separate locations. This design ensures that if one of our locations suffers a disruption in service, systems at an alternate location can be used to continue to provide service.

63.    Robinhood's failure to have a proper business continuity plan, or any backup plan whatsoever, was solely attributable to its own negligence. Additionally, by failing to timely execute trades during the Outages, Robinhood violated FINRA Rule 2232 by failing to maintain accurate

records of accounts and trade confirmations (including attempted trades), and Rule 3120, by failing

to have a sufficient supervisory system to gain compliance with regulatory laws.

64.    As a result of the foregoing, Plaintiff suffered loss and damage.

## CLASS ACTION ALLEGATIONS

65.    Plaintiff asserts his claims on behalf of the following proposed Class pursuant to

Section 382 of the California Code of Civil Procedure:

> All persons whose orders were unexecuted due to the outages of
> Defendants'' trading platform on March 2-3, 2020 and March 9 and
> dates thereafter when outages or disruption prevented customers from
> accessing their account or executing orders and who suffered out of
> pocket or other losses.  The class excludes Defendants' and any entity
> in which Defendants' have a controlling interest, and its officers,
> directors, legal representatives, successors and assigns.

66.    Numerosity: The Class is so numerous that joinder of all Class members is

impracticable.  The Class includes hundreds, and likely thousands, of Defendants' customers.

67.    Typicality: Plaintiff's claims are typical of the members of the Proposed Class

because, like the other Class members, they were unable to have their orders executed and suffered

loss thereby.

68.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class, and has

retained counsel experienced in complex class action litigation.  Plaintiff has no interests which are

adverse to those of the Class that they seek to represent.

69.    Commonality: Common questions of law and fact exist as to all members of the Class

and predominate over any questions solely affecting individual members of the Class, including:

a)   Whether Defendants' falsely advertised the platform;

b)   Whether Defendants' disseminated misleading promotional materials in an effort to

convince customers to open accounts and trade securities;

c)   Whether Defendants' violated California's Unfair Competition Law;

- 20 -

d)  Whether Defendants' violated the unfair and fraudulent prongs of California's Unfair Competition Law;

e)  Whether Defendants' violated California's False Advertising Law;

f)  Whether Defendants' violated California's Legal Remedies Act;

g)  Whether Defendants' breached Robinhood's express warranty;

h)  Whether Defendants' breached the implied covenant of good faith and fair dealing;

i)  Whether Defendants' breached contractual obligations owed to Plaintiff and the Class;

j)  Whether Plaintiff and the Class are entitled to actual, statutory, and punitive damages; and

k)  The amount of damages and other relief.

70.  These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual members of the Class.

71.  Plaintiff cannot be certain of the form and manner of proposed notice to class members until the class is finally defined and discovery is completed regarding the identity of class members. Plaintiff anticipates, however, that notice by mail can and will be given to class members who can be identified specifically.  The cost of notice, after class certification, trial, or settlement before trial, should be borne by Defendants.

72.  Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no claims antagonistic to those of the Class.  Plaintiff has retained counsel competent and experienced in complex class actions, including all aspects of this litigation.  Plaintiff's counsel will fairly, adequately, and vigorously protect the interests of the Class.

73.  Class action status is warranted under Rule 23(b)(1)(A) because the prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or

varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

74.    Class action status is also warranted under Rule 23(b)(1)(B) because the prosecution of separate actions by or against individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

75.    Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

76.    Plaintiff reserves their right to modify or amend the definition of the proposed Class at any time before the Class is certified by the Court.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

**(California Business and Professions Code §§ 17200 et seq.)**

**(Unlawful)**

77.    Plaintiff realleges and incorporates by reference the allegations hereinbefore made in the Complaint as if set forth fully herein.

78.    Plaintiff brings this claim on behalf of himself and the proposed Class.

79.    California Business and Professions Code §§ 17200 et seq., prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

80.    Defendants engaged in unlawful business acts and practices in violation of California Business and Professions Code §§ 17200 et seq., by engaging in the conduct specified elsewhere in this Complaint.

81.   Defendants have advertised, offered, and sold services misbranded under California Law.  See California Health & Safety Code § 110660.  Misbranded services cannot be legally advertised, offered, or sold.

82.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute "unlawful" business acts and practices in that Defendants' conduct violates:

   a)  California's False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500 et seq.;

   b)  California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 et seq.;

   c)  Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce; and

   d)  Applicable rules of the SEC and/or FINRA.

83.   Defendants leveraged its deception to induce Plaintiff and the Class to purchase services that were of lesser value and quality than advertised.

84.   The foregoing acts and practices have detrimentally impacted competition and caused substantial harm to Plaintiff, the Class, and the consuming public.  Plaintiff and members of the Class were misled and suffered injuries and lost money or property as a direct and proximate result of Defendants' unlawful business practices.

85.   Plaintiff and the Class could have reasonably avoided the harm alleged herein. Plaintiff and the Class were denied the benefit of the bargain.

86.   Defendants' offer of services were/are likely to deceive reasonable consumers. Likewise, Defendants' false claims were/are likely to deceive reasonable consumers.

87.   The false and misleading advertising and labeling described elsewhere in the Complaint presents a continuing threat to consumers in that such advertising will continue to mislead consumers to purchase Defendants' unreliable services.

88.   By reason of the foregoing, Defendants should be required to disgorge its illicit profits, make restitution to Plaintiff and the Class, pay compensatory and statutory damages and pay for Plaintiff and the Class' attorneys' fees.

89.   Plaintiff reserves the right to identify additional provisions of law violated by Defendants as further investigation and discovery warrants.

90.   Plaintiff believes damages are in excess of $100 million dollars.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
**(California Business and Professions Code §§ 17200 et seq.)**
**(Unfair and Fraudulent)**

91.   Plaintiff realleges and incorporates the allegations hereinbefore made in the Complaint as if set forth fully herein.

92.   Plaintiff brings this claim on behalf of himself and the proposed Class.

93.   California Business and Professions Code §§ 17200 et seq., prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

94.   The false and misleading labeling and advertising of their services, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.  Further, the harm from Defendants' conduct to Plaintiff, the Class, and the consumer public outweighs any conceivable benefit of such conduct.

95.   Defendants' false and misleading advertising have detrimentally impacted competition and caused substantial harm to Plaintiff, the Class, and the consuming public.  Plaintiff and

- 24 -

members of the Class were deceived, suffered injuries, and lost money or property as a direct and proximate result of Defendants' unlawful business practices.

96.   The false and misleading labeling and advertising, as alleged herein, also constitutes "fraudulent" business acts and practices because members of the consuming public, including Plaintiff and the Class, were/are likely to be deceived by the false and misleading advertising and labeling described elsewhere in the Complaint.

97.   Plaintiff and the Class could have reasonably avoided the harm alleged herein. Plaintiff and the Class were denied the benefit of the bargain when they decided to open an account with Robinhood over competitor products which were of better quality.  Had Defendants not engaged in its false and misleading advertising tactics, Plaintiff and the Class would not have opened Robinhood accounts.

98.   Defendants either knew or reasonably should have known that the advertising alleged herein was untrue and misleading.

99.   In addition, Defendants' modus operandi constitutes an unfair and fraudulent practice in that Defendants knew or should have known that consumers rely on reliable trading services but are unlikely to possess the expertise required to make a determination as to the adequacy of the platform.

100.  By reason of the foregoing, Defendants should be required to disgorge its illicit profits, pay compensatory and statutory damages and make restitution to Plaintiff and the Class, and pay for Plaintiff and the Class' attorneys' fees.

101.  Plaintiff believes damages are in excess of $100 million.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**

**(California Business and Professions Code §§ 17500 et seq.)**

102.  Plaintiff realleges and incorporates by reference the allegations hereinbefore made in the Complaint as if set forth fully herein.

103.  Plaintiff brings this claim on behalf of himself and the proposed Class.

104.  Defendants' acts and practices as described herein have deceived and/or are likely to deceive Plaintiff, the Class, and the public.  Defendants have repeatedly advertised that it can service customers trading orders.

105.  The advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the opening of accounts, deposits of funds and use of Defendants platforms and systems to trade securities.

106.  Defendants' advertising and labeling has deceived and is likely to deceive Plaintiff, the Class, and the public in the future.

107.  Defendants knew or by the exercise of reasonable care should have known that its advertisements concerning the platform were untrue or misleading.  Plaintiff and the Class based their decisions to open accounts with Robinhood were based in substantial part on Defendants' misrepresentations and omitted material facts.

108.  Defendants disseminated and continues to disseminate uniform advertising concerning their services which are unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500 et seq.  Such advertisements are likely to deceive, and continue to deceive, the public for the reasons detailed elsewhere in the Complaint.

109.  Plaintiff and the Class have suffered injury in fact and have lost money or property as a result of Defendants' violation of California Business & Professions Code §§ 17500 et seq.

1

2

110.  The misrepresentations and omissions by Defendants of the material facts detailed elsewhere in this Complaint constitute false and misleading advertising.

3

4

5

6

111.  As a result of Defendants' wrongful conduct, Plaintiff and the Class are entitled to compensatory and statutory damages and restitution and an order for the disgorgement of the funds by which Defendants was unjustly enriched.

7

112.  Plaintiff believes that damages are in excess of $100 million.

8

9

10

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**

**(California Civil Code §§ 1750 et seq.)**

11

12

13

113.  Plaintiff realleges and incorporates the allegations hereinbefore made in the Complaint as if set forth fully herein.

14

114.  Plaintiff brings this claim on behalf of himself and the proposed Class.

15

16

17

18

115.  The CLRA has adopted a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

19

20

21

116.  Defendants' policies, acts, and practices were intended to, and did, result in the purchase and use of the services primarily for personal, family, or household purposes, and violated and continue to violate at least the following sections of 1770(a) of the CLRA:

22

23

24

25

a)  § 1770(a)(5): which proscribes "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have";

26

27

28

b)  § 1770(a)(7) which proscribes "[r]epresenting that goods or services are of a particular standard, quality or grade"; and

- 27 -

c) § 1770(a)(9): which proscribes "[a]dvertising goods or services with intent not to sell them as advertised."

117.  Defendants' wrongful acts and practices as described elsewhere were willful, oppressive, and fraudulent.

118.  As a proximate result of these violations by Defendants, Plaintiff and the Class have suffered irreparable harm and are entitled to the payment of costs and attorneys' fees and such other relief as deemed appropriate and proper by the Court under California Civil Code § 1780.

119.  In compliance with California Civil Code § 1782, Defendants received written notice by certified mail prior to the filing of this action of Plaintiff's claims and of their intention to seek damages under California Civil Code § 1750 et seq., unless Defendants provides an appropriate refund plus interest and other appropriate relief.

120.  Defendants have failed to provide such relief and have not adequately responded to the demand to pay and otherwise rectify the wrongful conduct described above on behalf of all members of the Class who may be entitled to relief under the CLRA.

121.  Accordingly, Plaintiff seeks an award of all actual and punitive damages permitted for violation of the CLRA, including for statutory damages of $1,000 per Class.

122.  Plaintiff believes damages are in excess of $100 million.

## FIFTH CLAIM FOR RELIEF
### BREACH OF CONTRACT

123.  Plaintiff hereby incorporates by reference the factual allegations hereinbefore alleged.

124.  In order to use the Robinhood trading platform, a potential customer must enter into the Agreements with Defendants.  Since the Outages, Robinhood has twice amended the operative Customer Agreement.  Each of these Customer Agreements mandates that Robinhood's accounts and trading activities will be subject to all applicable state and federal laws and regulations,

- 28 -

including those set by self-regulatory organizations. Each Customer Agreement also selects California choice of law to apply. Robinhood's customers who trade on margin are subject to the Margin and Short Account Agreement, and Robinhood's customers who trade options are subject to the Options Agreement. Most of the contracts expressly refer and incorporate each other's terms by reference, including by hyperlink. All Robinhood customers are also subject to the Robinhood Terms & Conditions, and Robinhood's Business Continuity Plan Summary. Each of these standardized agreements are contracts of adhesion that are imposed on Robinhood's customers as conditions of use and are not subject to negotiation.

125. The three main agreements between Robinhood and its customers are the T&C, the CA and the OA.

126. In relevant part, the CA provides:

> In consideration of Robinhood Financial LLC, Robinhood Securities, LLC, and their agent and assigns (collectively, "Robinhood") opening one or more accounts on my behalf ("My Account(s)" or the "Account(s)") for the purchase, sale or carrying of securities or contract relating thereto and/or the borrowing of funds, which transactions are cleared through Robinhood Securities.

> I understand Robinhood Financial provides trading and brokerage services through the Robinhood website (the "Website") and the Robinhood mobile application (the "App").

127. In relevant part, the T&C provides:

> Robinhood Financial LLC ("Robinhood Financial"), a wholly-owned subsidiary of Robinhood Markets, Inc. ("Robinhood Markets"), is a registered broker-dealer and member of FINRA and SIPC that provides online and mobile application-based discount stock brokerage services to self-directed investors.

> You agree that these Terms and Conditions shall be governed by and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law. Any legal action or proceeding arising under these Terms and Conditions will be brought exclusively in courts located in Santa Clara County, California, and you hereby irrevocably consent to the personal

- 29 -

jurisdiction and venue therein.  If any provision of these Terms and Conditions is deemed unlawful, void or for any reason unenforceable, then that provision will be deemed severable from these Terms and conditions and will not affect the validity and enforceability of the remaining provisions.

128.  In relevant parts, the OA provides:

This option agreement sets forth the respective rights and obligations arising in connection with any option transaction by you (Robinhood Financial LLC and Robinhood Securities, LLC) on behalf including but not limited to, the purchase and sale of put and call options.

Unless I give specific instructions as to where to direct orders, I hereby authorized you to select the exchange or market to which my orders are directed.

129.  Robinhood furnished consideration to Plaintiff and Class members in the form of access to Robinhood's online trading platform, enabling them to trade securities and options listed on U.S. securities exchanges.  In exchange, Robinhood received consideration from Plaintiff and Class members including, but not limited to, order flow data, which it sold to market makers to generate revenue, interest generated on cash balances in accounts, commissions and fees based on trades placed, interest on margin extensions, and fees for Gold Membership access.

130.  Robinhood breached its contracts with customers by failing to perform under the contracts entirely, and by, among other things, failing to maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by failing to adequately design, test, and monitor its infrastructure necessary to timely process customers' transactions; by failing to provide timely access to trading services during the Outages; by failing to timely process securities trades, including taking orders, entering orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to customers' accounts, securities and funds; by failing to have a supervisory control system that

would have identified and prevented the Outages; by failing to have adequate business contingency and continuity plans to ensure timely service in the event of an outage; by failing to have any back-up plans to receive and process customers' orders during the Outages; by having no adequate means for customers to get assistance during the Outages; by failing to comply with applicable legal regulatory requirements and industry standards of care, including those set by FINRA and its predecessor authorities; and by making unauthorized transactions on customers' accounts.

131.   Robinhood's Customer Agreement purports to limit liability for "temporary" service interruptions due to events like maintenance, but it specifically distinguishes that  purported limitation of liability from the circumstances that led to the lengthy Outages which were attributable solely to Robinhood's conduct: "I agree that Robinhood will not be responsible for temporary interruptions in service due to maintenance, Website or App changes, or failures, nor shall Robinhood be liable for extended interruptions due to failures beyond our control, including but not limited to the failure of interconnecting and operating systems, computer viruses, forces of nature, labor disputes and armed conflicts."  As Robinhood admitted both during and after the extended Outages, they were not attributable to "failures beyond our control" but the lack of adequate infrastructure, foresight, and planning.  The Outages at issue in this case were foreseeable and preventable, and in breach of the parties' agreements.  All exculpatory provisions and limitations of liability are invalid under California law in the circumstances alleged herein.

132.   Robinhood's failure to perform and its breaches of the Agreements  and applicable contracts resulted in damages and losses to Plaintiff and Class members and continues to  expose them to harm because Robinhood continues to fail to perform under the Agreements.  These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial, but believed to be in excess of $100 million.

133. Additionally, because damages may not be a full and complete remedy due to the ongoing nature of the relationship between the parties and the continuing risk of future harm, Plaintiff and Class members seek specific performance of the contracts to ensure Robinhood has sufficient infrastructure to manage their accounts and trading activity in the future.

## SIXTH CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing

134. Plaintiff hereby incorporates by reference the factual allegations hereinbefore alleged.

135. As set forth above, Plaintiff, Class members and Robinhood are parties to the Agreements.

136. Robinhood unfairly frustrated Plaintiff's and Class members' rights to receive the benefits of Agreements and related contracts by, failing to perform under the contracts entirely, and by, among other things, failing to maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by failing to adequately design, test, and monitor its infrastructure necessary to timely process customers' transactions; by failing to provide timely access to trading services during the Outages; by failing to timely process securities trades, including taking orders, entering orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to customers' accounts, securities and funds; by failing to have a supervisory control system that would have identified and prevented the Outages; by failing to have adequate business contingency and continuity plans to ensure timely service in the event of an outage; by failing to have any back-up plans to receive and process customers' orders during the Outages; by having no adequate means for customers to get assistance during the Outages; by failing to comply with applicable legal regulatory

requirements and industry standards of care, including those set by FINRA and its predecessor authorities; and by making unauthorized transactions on customers' accounts.

137. Robinhood's conduct has breached the implied covenant of good faith and fair dealing because it has caused Plaintiff and Class members' harm, losses, and damages, and continues to expose them to harm because Robinhood continues to fail to perform under the Agreements. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial, but believed to be in excess of $100 million.

138. Additionally, because damages may not be a full and complete remedy due to the ongoing nature of the relationship between the parties and the continuing risk of future harm, Plaintiff and Class members seek specific performance of the contracts to ensure Robinhood has sufficient infrastructure to manage their accounts and trading activity in the future.

## SEVENTH CLAIM FOR RELIEF

### GROSS NEGLIENCE

139. Plaintiff hereby incorporates by reference the factual allegations hereinbefore alleged.

140. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

141. Robinhood unlawfully breached its duties by, among other things, failing to provide adequate technological systems necessary to perform under the contract; failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; failing to provide access to its trading services in a timely manner; and otherwise permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the contracts.

142.  Robinhood's conduct as set forth in  this Complaint was want of even scant care and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Indeed, Robinhood essentially abandoned its customers altogether during the Outage, a standard of care so far below what is required for business engaging in time sensitive trading services that it amounts to a complete abandonment of its duties. Essentially no other conduct than that committed by Robinhood could be more grossly negligent than abandoning its customers altogether for substantial periods of times during which they incurred substantial losses and were unable to contact anyone at Robinhood.

143.  Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and class members proximately caused losses and damages that would not have occurred but for Robinhood's breach of its duty of due care. These losses reflect damages to Plaintiff and class members in an amount to be determined at trial but are believed to be in excess of $100 million.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief as follows:

a)   Determining that this action may proceed as a class action;

b)   Designating Plaintiff as Class representative;

c)   Designating Plaintiff's counsel as counsel for the Class;

d)   Issuing proper notice to the Class at Defendants' expense;

e)   Awarding restitution and disgorgement of Defendants' revenues obtained by means of any wrongful act or practice to Plaintiff and Class members;

f)   Awarding actual, statutory, and punitive damages and interest to Plaintiff and Class members in an amount not less than $100 million as may be proven at trial;

g)   Awarding reasonable attorneys' fees, interest, and costs to the full extent permitted by law; and

h)   All such other and further relief as this Court may deem just and proper.

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff and the Class demand a trial by jury.

3

Dated:  December 17, 2020                          Respectfully submitted,

4

5

6

7

MARIO ISKANDER
8                                          THE LAW OFFICES OF HANI S. BUSHRA
16541 Gothard Street # 208
9                                          Huntington Beach, California 92647
Telephone:  (714) 984-2000
10                                         Facsimile:  (714) 489-8128
Email:  mario@bushralaw.com
11

12                                                     and

13                                        LEE SQUITIERI (subject to *pro hac vice*)
SQUITIERI & FEARON, LLP
14                                        32 East 57th Street
12th Floor
15                                        New York, New York 10022
Telephone: (212) 421-6492
16                                        Facsimile: (212) 421-6553
Email: lee@sfclasslaw.com
17

18

19

20                                        Attorneys for Plaintiff and the Proposed Class

21

22

23

24

25

26

27

28

- 35 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Mario Iskander, Esq. (327025), The Law Offices Of Hani S. Bushra
16541 Gothard Street # 208, Huntington Beach, CA 92647
TELEPHONE NO.: (714) 984-2000    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):  mario@bushralaw.com
ATTORNEY FOR (Name):  Plaintiff

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 12/21/2020 12:00 AM
Reviewed By: R. Walker
Case #20CV375138
Envelope: 5505453**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 191 N 1st Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME:

PLAINTIFF/PETITIONER: Seth Stewart

DEFENDANT/RESPONDENT: Robinhood Financial, LLC, et al.

CASE NUMBER:
**20CV375138**

JUDICIAL OFFICER:

DEPT.:

### NOTICE OF RELATED CASE

---

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Withouski v. Robinhood Financial, LLC, et al.
    b.  Case number:  20-civ-01730
    c.  Court: ☐ same as above
        ☑ other state or federal court *(name and address)*:  Superior Crt of the State of CA San Mateo County
    d.  Department:
    e.  Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:
    f.  Filing date:
    g.  Has this case been designated or determined as "complex?" ☑ Yes ☐ No
    h.  Relationship of this case to the case referenced above *(check all that apply)*:
        ☑ involves the same parties and is based on the same or similar claims.
        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
        ☐ involves claims against, title to, possession of, or damages to the same property.
        ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
        ☐ Additional explanation is attached in attachment 1h
    i.  Status of case:
        ☑ pending
        ☐ dismissed ☐ with ☐ without prejudice
        ☐ disposed of by judgment

2.  a.  Title:
    b.  Case number:
    c.  Court: ☐ same as above
        ☐ other state or federal court *(name and address)*:
    d.  Department:

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
www.courtinfo.ca.gov

CM-015

| PLAINTIFF/PETITIONER: Seth Stewart | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Robinhood Financial, LLC, et al. | |

2. *(continued)*

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3.  a. Title:

   b. Case number:

   c. Court: ☐ same as above

      ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 12/19/2020

Mario Iskander

(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ *Mario Iskander* (signature)

(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]      **NOTICE OF RELATED CASE**      Page 2 of 3

CM-015

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Seth Stewart | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Robinhood Financial, LLC, et al. | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*


2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:
   a. Name of person served:                       c. Name of person served:

      Street address:                                 Street address:
      City:                                           City:
      State and zip code:                             State and zip code:


   b. Name of person served:                       d. Name of person served:

      Street address:                                 Street address:
      City:                                           City:
      State and zip code:                             State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

December 18, 2020                          ▶
_____              _____
(TYPE OR PRINT NAME OF DECLARANT)                  (SIGNATURE OF DECLARANT)

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:** *(AVISO AL DEMANDADO):*<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD MARKETS, INC. and ROBINHOOD SECURITIES<br><br>**YOU ARE BEING SUED BY PLAINTIFF:** *(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>SETH STEWART, individually and as a representative of the class | *FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)*<br>FILED<br>December 21, 2020<br>Clerk of The Court<br>Superior Court of CA<br>County of Santa Clara<br>20CV375138<br>By: rwalker |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of the State of California County Of Santa Clara 191 N 1st St, San Jose, CA 95113 | CASE NUMBER: *(Número del Caso):* **20CV375138** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mario Iskander, Esq., The Law Offices of Hani S. Bushra, 16541 Gothard St #208, Huntington Beach, CA 92647 (714) 984-2000

| DATE: *(Fecha)* ~~10/12/2020~~ December 21, 2020 | **Clerk of the Court** | Clerk, by *(Secretario)* /s/ R. Walker | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ✱ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [ ] on behalf of *(specify)*:

   under: [ ✱ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
       [ ] other *(specify)*:

4. [ ✱ ] by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |
|---|---|---|

For your protection and privacy, please press the Clear This Form button after you have printed the form.  Print this form    Save this form    

**ATTACHMENT CV-5012**

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA 95113*

CASE NUMBER: 20CV375138

---

## PLEASE READ THIS ENTIRE FORM

---

_PLAINTIFF_ (the person suing):   Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

_DEFENDANT_ (The person sued):  **You must do each of the following to protect your rights:**

1.   You must file a **written response** to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2.   You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3.   You must attend the first Case Management Conference.

**Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

_RULES AND FORMS:_   You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

_CASE MANAGEMENT CONFERENCE (CMC):_   You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

**You or your attorney must appear at the CMC.**  *You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: Hon. Sunil R. Kulkarni                    **Department:** 1

The 1st CMC is scheduled for:  (Completed by Clerk of Court)

Date: 4/15/21          Time: 2:30 pm          in **Department:** 1

The next CMC is scheduled for:  (Completed by party if the 1st CMC was continued or has passed)

Date: _____          Time: _____          in **Department:**_____

---

_ALTERNATIVE DISPUTE RESOLUTION (ADR):_   If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

_WARNING:_ Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

Reset Form

---

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
**191 N. FIRST STREET**
**SAN JOSE, CA  95113-1090**

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 12/28/2020 9:31 AM
Reviewed By: R. Walker
Case #20CV375138
Envelope: 5536360**

TO:     FILE COPY

RE:              **Stewart v. Robinhood Financial, LLC, et al.**
CASE NUMBER:     **20CV375138**


**ORDER DEEMING CASE COMPLEX AND STAYING DISCOVERY
AND RESPONSIVE PLEADING DEADLINE**


WHEREAS, the Complaint was filed by Plaintiff **SETH STEWART** ("Plaintiff") in the Superior Court of California, County of Santa Clara, on **December 21, 2020** and assigned to Department **1** (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni**  presiding, pending a ruling on the complexity issue;

IT IS HEREBY ORDERED that:
The Court determines that the above-referenced case is **COMPLEX** within the meaning of California Rules of Court 3.400.  The matter remains assigned, for all purposes, including discovery and trial, to Department  **1** (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni**  presiding.
The parties are directed to the Court's local rules and guidelines regarding electronic filing and to the Complex Civil Guidelines, which are available on the Court's website.
Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the Master Service List shall be under the auspices of (1) Plaintiff **SETH STEWART**, as the first-named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.
Pursuant to Government Code section 70616(c), each party's complex case fee is due within ten (10) calendar days of this date.
Plaintiff shall serve a copy of this Order on all parties forthwith and file a proof of service within seven (7) days of service.
Any party objecting to the complex designation must file an objection and proof of service within ten (10) days of service of this Order.  Any response to the objection must be filed within seven (7) days of service of the objection.  The Court will make its ruling on the submitted pleadings.
The Case Management Conference remains set for **April 15, 2021 at 2:30 p.m. in Department 1** and all counsel are ordered to attend by **CourtCall**.
Counsel for all parties are ordered to meet and confer in person at least 15 days prior to the First Case Management Conference and discuss the following issues:
1.  Issues related to recusal or disqualification;
2.  Issues of law that, if considered by the Court, may simplify or further resolution of the case, including issues regarding choice of law;

3. Appropriate alternative dispute resolution (ADR), for example, mediation, mandatory settlement conference, arbitration, mini-trial;
4. A plan for preservation of evidence and a uniform system for identification of documents throughout the course of this litigation;
5. A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;
6. Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case (counsel should consider whether they will stipulated to limited merits discovery in advance of certification proceedings), allowing the option to complete discovery if ADR efforts are unsuccessful;
7. Any issues involving the protection of evidence and confidentiality;
8. The handling of any potential publicity issues;

Counsel for Plaintiff is to take the lead in preparing a Joint Case Management Conference Statement to be filed 5 calendar days prior to the First Case Management Conference, and include the following:
1. A Statement as to whether additional parties are likely to be added and a proposed date by which all parties must be served;
2. Service lists identifying all primary and secondary counsel, firm names, addresses, telephone numbers, email addresses and fax numbers for all counsel;
3. A description of all discovery completed to date and any outstanding discovery as of the date of the conference;
4. Applicability and enforceability of arbitration clauses, if any;
5. A list of all related litigation pending in other courts, including Federal Court, and a brief description of any such litigation, and a statement as to whether any additional related litigation is anticipated (CRC 3.300);
6. A description of factual and legal issues – the parties should address any specific contract provisions the interpretation of which may assist in resolution of significant issues in the case;
7. The parties' tentative views on an ADR mechanism and how such mechanism might be integrated into the course of the litigation;
8. Whether discovery should be conducted in phases or limited; and if so, the order of phasing or types of limitations of discovery.  If this is a class action lawsuit, the parties should address the issue of limited merits discovery in advance of class certification motions.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Case Management Conference Statement, the positions of each party or of various parties should be set forth separately and attached to this report as addenda.  The parties are encouraged to propose, either jointly or separately, any approaches to case management they believe will promote the fair and efficient handling of this case.  The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

**STAY ON DISCOVERY AND RESPONSIVE PLEADING DEADLINE**  Pending further order of this Court, the service of discovery and the obligation to respond to any outstanding discovery is stayed. However, Defendant(s) shall file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance shall be without prejudice to the later filing of a motion to quash to contest jurisdiction.  Parties shall not file or serve responsive pleadings, including answers to the complaint, motions to strike, demurrers, motions for

-----
Updated on 7/30/20.                                                                                                2

change of venue and cross-complaints until a date is set at the First Case Management Conference for such filings and hearings.

This Order is issued to assist the Court and the parties in the management of this "Complex" case through the development of an orderly schedule for briefing and hearings.  This Order shall not preclude the parties from continuing to informally exchange documents that may assist in their initial evaluation of the issues presented in this Case.

Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

SO ORDERED.

Date:  December 24, 2020

Hon. **Sunil R. Kulkarni**
Judge of the Superior Court

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line, (408) 882-2690 or the Voice/TDD California Relay Service, (800) 735-2922.

**Docket Notice: 04/15/2021 Conference: Case Management**

04/15/2021 Conference: Case Management ▾

Judicial Officer
Kulkarni, Sunil R

Hearing Time
2:30 PM

Comment
(1st CMC) Proposed Class Action. Related Case: Withouski v. Robinhood Financial, LLC, et al, Superior Court of California, County of San Mateo, Case No. 20-civ-01730; date complaint filed is unknown; pending. Discovery and responsive pleading deadline stayed, as of 12/28/20, when the case was deemed complex.

## PROOF OF SERVICE

### Seth Stewart v. Robinhood Financial, LLC, et al.

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 235 Montgomery Street, 17th Floor, San Francisco, CA 94104.

On January 7, 2021, I served true copies of the following document(s) described as:

**NOTICE OF REMOVAL**

**CIVIL CASE COVER SHEET**

**DECLARATION OF MILES WELLESLEY IN SUPPORT OF NOTICE OF REMOVAL**

on the interested parties in this action as follows:

**Hani Bushra**
**Mario Iskander**
**The Law Offices of Hani S. Bushra**
**16541 Gothard Street, #208**
**Huntington Beach, California 92647**
**Tel: (714) 984-2000**

**Lee Squitieri**
**Squitieri & Fearon, LLP**
**32 East 57th Street, 12th Floor**
**New York, New York 10022**
**Tel: (212) 421-6492**

**BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 7, 2021, at Benicia, California.

Danielle M. Silva

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

38567\13859537.1